UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROCHELLE BROOKS, formerly ROCHELLE
COLEMAN,

                              Plaintiff,

                                                                5:17-CV-1186
v.                                                              (GLS/TWD)

ONONDAGA COUNTY DEPARTMENT OF
CHILDREN & FAMILY SERVICES, et al.,

                              Defendant.
_____

APPEARANCES:

ROCHELLE BROOKS, formerly
ROCHELLE COLEMAN
Plaintiff pro se
231 Lilac Street
Syracuse, New York 13208

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

On October 25, 2017, Plaintiffs Rochelle Brooks, formerly Rochelle Coleman,

individually and on behalf of her two minor daughters F.B. and H.B., submitted two complaints

she wished to file in a single action to the Clerk.  (Dkt. Nos. 1 and 1-1.)  One of the complaints

was brought under 42 U.S.C. § 1983. (Dkt. No. 1.)  The second was brought under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq,* as amended. (Dkt. No. 1-1.)

The Onondaga Department of County Children & Family Services ("Children and Family

Services"), Syracuse Police Department, and Onondaga County Family Courthouse ("Family

Court") were named as Defendants in the § 1983 complaint.  (Dkt. No. 1 at 1-2.[1])  Onondaga County Family Court Judge, the Hon. Michael L. Hanuszczak, and Children and Family Services were named as Defendants in the ADA action.  (Dkt. No. 1-1 at 1-2.)

Plaintiff Brooks also submitted an application to proceed *in forma pauperis* (Dkt. No. 2) and a motion for appointment of counsel.  (Dkt. No. 3.)  Plaintiff's *in forma pauperis* application was granted by the Court and her motion for appointment of counsel was denied without prejudice in an Order filed on December 18, 2017.  (Dkt. No. 8 at 7-8.)

In its December 18, 2017, Order, the Court determined that initial review under 28 U.S.C. § 1915(e) was premature because Plaintiff Brooks had named her minor daughters as Plaintiffs, and non-lawyer parents cannot represent their children *pro se.  Id*. at 5-6.  *See Cheung v. Youth Orchestra Foundation of Buffalo, Inc*., 906 F.2d 59, 61 (2d Cir. 1990).  The Court ordered that the case be stayed for ninety days to allow Plaintiff Brooks to "retain counsel with regard to all claims being pursued on behalf of her minor children, to move for appointment of counsel for her minor children, or to file amended complaints deleting her minor children as Plaintiffs and deleting all claims asserted on behalf of [her] minor children."  (Dkt. No. 8 at 7.)

## II.    PLAINTIFF'S AMENDED COMPLAINT

On March 19, 2018, Plaintiff Brooks refiled her original complaints on which she had crossed out her minor children F.B and H.B. as Plaintiffs and added the word "amended.  (Dkt. No. 9.)  The amended complaints are in all other respects identical to the originals.  (*See* Dkt. Nos 1, 1-1, and 9.)

---

[1]    Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

In her amended § 1983 complaint, Plaintiff alleges that Children and Family Services unlawfully seized her two daughters without a warrant, court order, or probable cause, and unlawfully arrested Plaintiff.  (Dkt. No. 9 at 2.)  Plaintiff has also alleged in conclusory fashion violations by the Defendants of criminal statutes at 18 U.S.C. §§ 241and 242, N.Y. RPAPL § 755, and fruits of the poisonous tree, unlawful arrest, perjury, corruption, treason, and kidnaping.  *Id*. at 3.  Plaintiff seeks damages in the amount of ten million dollars for retaliation, and three million dollars for the third unlawful seizure of her daughters, mental anguish, harassment, duress, and punitive damages for the hardship Plaintiff and her daughters have suffered.  *Id*. at 4.

In her amended ADA complaint, Plaintiff alleges that she suffers from brain and lung cancer, migraines, memory loss, vision loss, asthma, COPD, arthritis, degenerative joint disease, back and neck arthritis pain, and walking limitations.  *Id.* at 6.  Plaintiff claims that Judge Hanuszczak violated the ADA by making her appear in court at the last minute, or having a hearing without her by scheduling appearances in two courts at almost the same time.  *Id*. at 3.  Plaintiff alleges Children and Family Services violated 18 U.S.C. §§ 241and 242, and also that they violated N.Y. CPLR §§ 4501 through 4548 (state court civil evidentiary rules) by committing perjury, fraud, and evidence and witness tampering to justify removing/seizing Plaintiff's two daughters from her home three times.  *Id*. at 7.  Plaintiff is seeking reversal of the Family Court decision and return of her two daughters, along with ten million dollars in damages for the retaliation Plaintiff and her daughters were required to suffer, $86, 400 x 4 dollars for each month Plaintiff's daughters were deprived of their family and family bond, and three million for the defamation, duress, and cruel and unusual hardship the Plaintiffs were forced to

endure.[2]  *Id*. at 8.

## III.    INITIAL REVIEW

Having found that Plaintiff meets the financial criteria for commencing this case *in forma*

*pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity,

the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28

U.S.C. §§ 1915(e).  Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the

court shall dismiss the case at any time if the court determines that . . . the action

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C.

§ 1915(e)(2)(B)(i)-(iii).[3]

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se*

litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme

caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has

been served and both parties (but particularly the plaintiff) have had an opportunity to respond."

*Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a

court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that

is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the

---

[2]  Inasmuch as Plaintiff's minor daughters are no longer parties, the Court will disregard Plaintiff's damages claim on their behalf in its initial review of the amended complaints.

[3]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged    but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV.    ANALYSIS

In conducting an initial review under 28 U.S.C. § 1915(e), the Court will treat Plaintiff's

two complaints as a single action.

### A.    Claims in Plaintiff's Amended § 1983 Complaint

In her § 1983 claim, Plaintiff has alleged violation of 18 U.S.C. §§ 241 and 242 by

Defendants Children and Family Services, Syracuse Police Department[4], and the Onondaga

Family Court.[5]  However, 18 U.S.C. §§ 241 (criminal conspiracy) and 242 (criminal deprivation

of rights under color of law) are criminal statutes that afford no private right of action.  *See Hill*

*v. Didio*, 191 F. App'x 13, 14 (2d Cir. 2006) (no private right of action under 18 U.S.C. §§ 241

and 242) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994)).

Therefore, the Court finds Plaintiff has failed to state a § 1983 claim against the three Defendants

under either of those provisions.

Plaintiff has also alleged a state law claim for abuse of process under N.Y. RPAPL § 755

against all three Defendants.  RPAPL § 755 provides for a stay of proceedings or an action for

---

[4]  As the Court has previously explained to Plaintiff, the Syracuse Police Department does not have the capacity to be sued as an entity separate from the City of Syracuse.  *See Coleman v. Syracuse Police Department*, No. 5:16-CV-00836 (LEK/TWD), 2016 WL 4411339, at *3 (N.D.N.Y. July 22, 2016).  Therefore, the Court will deem the City of Syracuse to be the named Defendant in its initial review.

[5]  The New York State Unified Court System, of which the Onondaga County Family Court is a part, as an arm of the State, is protected from Plaintiff's suit by the State's Eleventh Amendment sovereign immunity.  *See McKnight v. Middleton*, 699 F. Supp. 2d 507, 521 (E.D.N.Y. 2010) (citing *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009)).  Therefore, Plaintiff's claims against the Onondaga County Family Court are barred by the Eleventh Amendment.

rent upon failure to make repairs.  Inasmuch as the Court is recommending that all of Plaintiff's federal claims against Defendants be dismissed with prejudice and without leave to amend, it also recommends that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims, without prejudice to refiling in state court and to reconsideration in the event the District Court does not accept this Court's recommendation for dismissal of all of Plaintiff's federal claims with prejudice and without leave to amend.  *See Kolari v. New York Presbyterian Hosp.*, 455 F.3d 118, 120 (2d Cir. 2006).

Plaintiff has failed to allege any facts whatsoever plausibly showing viable federal claims against any of the Defendants for fruits of the poisonous tree, perjury, corruption, treason, and kidnaping.  To the extent Plaintiff intends to plead state law claims, the Court recommends that the District Court decline to exercise supplemental jurisdiction.

Plaintiff's wholly conclusory assertion of unlawful arrest likewise fails to state a false arrest claim under the Fourth Amendment.  The elements of a § 1983 claim for false arrest in violation of the Fourth Amendment are "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (internal citation and quotations marks omitted). Probable cause is a complete defense to a false arrest claim.  *Id.*

The sole factual allegation in Plaintiff's amended complaint regarding her false arrest claim is that Children and Family Services "unlawfully seized my two daughters, without warrant, court order, or any probable cause, history of any crime & unlawfully arrested me, seized my two daughters . . . in retaliation."  (Dkt. No. 9 at 2.)  In order to "establish a claim for

false arrest under § 1983, a plaintiff must show that the defendant intentionally confined him without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citation and internal quotation marks omitted). Conclusory allegations are insufficient to state a claim, and Plaintiff has failed to allege facts regarding the charge on which she was arrested and the facts and circumstances surrounding the alleged arrest, and she has not made a plausible showing that she was taken into physical custody and confined without consent or justification. *See Lacey v. Yates County*, 30 F. Supp. 3d 213, 226 (W.D.N.Y. 2014) ("The heart of a false arrest claim is a being taken into physical custody.")

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim under § 1983 against Children and Family Services and the City of Syracuse, and that her § 1983 claim against Onondaga County Family Court is barred by the Eleventh Amendment. Therefore, the Court recommends dismissal with prejudice and without leave to amend of Plaintiff's § 1983 claims as set forth in her § 1983 amended complaint against the City of Syracuse, the Onondaga County Court, and Children and Family Services.[6]  (Dkt. No. 9 at 1-4.)

**B.    Claims in Plaintiff's Amended ADA Complaint**

1.    <u>ADA Claim Against Judge Hanuszczak</u>

Plaintiff alleges that Family Court Judge Hanuszczak violated her rights under the ADA by my making her appear in court at the last minute, having an ex parte hearing without serving her, or scheduling her to appear in two courts at the same time or close to the same time.  (Dkt.

---

[6]  Although leave to amend is to be freely granted to pro se plaintiff, the Court declines to recommend that Plaintiff be granted leave to amend her false arrest claim in this case because her single conclusory allegation that she was "unlawfully arrested" (Dkt. No. 9 at 2), even liberally read, is insufficient to give any indication that Plaintiff would be able to state a valid claim if given the opportunity.  *See Cuoco*, 222 F.3d at 112.

No. 9 at 7.)  It is well-settled that judges generally have absolute judicial immunity from suits for money damages for their judicial actions.  *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009).  The fact that a plaintiff is asking for non-money damages as well is of no consequence to the application of the doctrine of judicial immunity.  *See DiPasquale v. Milin*, 303 F. Supp. 2d 430 432 (S.D.N.Y. 2004).  Absolute immunity extends to any actions taken within the scope of a judge's judicial responsibilities or within his jurisdiction.  *Mireles v. Waco*, 502 U.S. 9, 9-12 (1991).

Courts in this Circuit and others have found judicial immunity to extend to claims under the ADA.  *See Richter v. Connecticut Judicial Branch*, No. 3:12cv1638 (JBA), 2014 WL 1281444, at *10 (D. Conn. Mar. 27, 2014)[7] (dismissal of ADA claim on judicial immunity grounds where alleged denial of ADA accommodations related to court's control over ongoing proceedings and managing the court's docket); *Positano v. New York*, No. 12-CV-2288 (ADS) (AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA); *Bobrowsky v. Yonkers Courthouse*, 777 F. Supp. 2d 692 (S.D.N.Y. 2011) (dismissing an action that included an ADA claim against three state judges on judicial immunity grounds); *see also Goldblatt v. Doerty*, 503 F. App'x 537 (9th Cir. 2013) ("The district court properly dismissed Goldblatt's claims regarding defendant's alleged denial of ADA accommodations be they arose out of defendant's rulings in his capacity as a judge presiding over a state court family law proceeding, and, therefore, they were barred by absolute judicial immunity.")

---

[7] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Plaintiff claims Judge Hanuszczak violated her rights under the ADA in the scheduling of hearings involving custody of her children. (Dkt. No. 9 at 7.) As noted above, absolute judicial immunity applies to ADA claims related to the court's control over ongoing proceedings and managing the court's docket. *See Richter,* 2014 WL 1281444, at *10. Therefore, the Court finds that Judge Hanuszczak is entitled to absolute judicial immunity with regard to Plaintiff's claims against him and recommends dismissal of the action with prejudice and without leave to amend against Judge Hanuszczak.

2.    Claim Against Children and Family Services

Plaintiff alleges again in her amended ADA complaint that Child and Family Services violated criminal statutes 18 U.S.C. §§ 241 and 242. (Dkt. No. 9 at 7.) As noted above those criminal statues afford Plaintiff no private right of action, *see Hill,* 191 F. App'x at 14, and the Court has recommended that those claims be dismissed with prejudice and without leave to amend.

Plaintiff also appears to allege state law claims for perjury, fraud, and evidence and witness tampering in violation of the New York State court civil rules of evidence set forth in CPLR 4501 through 4548, to get her children removed from her home unlawfully three times. (Dkt. No. 9 at 7.) As with Plaintiff's other state law claims, the Court is recommending that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *See Kolari,* 455 F.3d at 120.

C.    **Motion for Appointment of Counsel**

Plaintiff filed a second motion for appointment of counsel with her amended complaints. (Dkt. No. 10.) Plaintiff claims she was denied representation by legal services because she has

been black-balled.  *Id*.  Even if the Court were not recommending dismissal of both of Plaintiff's amended complaints, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel).  Therefore, the motion is denied.  The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for appointment of counsel in the event the District Court allows the action to proceed.

ACCORDINGLY, it is hereby

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 10) is **DENIED WITHOUT PREJUDICE**; and it is

**RECOMMENDED** that Plaintiff's action (Dkt. No. 9 at 1-8) be **DISMISSED IN ITS ENTIRETY**; and it is further

**RECOMMENDED** that Plaintiff's amended 42 U.S.C. § 1983 complaint (Dkt. No. 9 at 1-4) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e), with the exception of Plaintiff's state law claim under N.Y. RPAPL 755; and it is further

**RECOMMENDED** that Plaintiff's amended ADA complaint (Dkt. No. 9 at 5-8) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e), with the exception of Plaintiff's state law claims for perjury, fraud, and evidence and witness tampering in violation of CPLR 4501 through 4548; and it is further

**RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims under claim under N.Y. RPAPL 755 (Dkt. No. 9 at 4) and those for perjury, fraud, and evidence and witness tampering alleged to be in violation of CPLR 4501

through 4548, *id*. at 7; and it is hereby

      **ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein, in accordance

with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated:  April 9, 2018
       Syracuse, New York

                                         Therese Wiley Dancks
                                         United States Magistrate Judge

---

    [8]  If you are proceeding pro se and are served with this Order and Report-
Recommendation by mail, three additional days will be added to the fourteen-day period,
meaning that you have seventeen days from the date the Order and Report-Recommendation was
mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed
period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of
the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2016 WL 4411339
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Rochelle Coleman, Plaintiff,

v.

Syracuse Police Department, et al., Defendant.

5:16-CV-00836 (LEK/TWD)
|
Signed 07/22/2016

**Attorneys and Law Firms**

ROCHELLE COLEMAN, 231 Lilac Street, Syracuse, New York 13208, Plaintiff pro se.

**Opinion**

### ORDER AND REPORT-RECOMMENDATION

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** The Clerk has sent to the Court three complaints filed in one action at the request of pro se Plaintiff Rochelle Coleman. [1] (Dkt. Nos. 1, 1-1, and 1-2.) Each of the separate complaints has purportedly been brought pursuant to a different civil rights statute: 42 U.S.C. § 1983 (Dkt. No. 1); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 (Dkt. No. 1-1); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Dkt. No. 1-2.) Plaintiff has sued the Syracuse Police Department and the 911 Administration Center. [2] Id. Plaintiff has also filed two motions to proceed in forma pauperis ("IFP application") and a motion for the appointment of counsel. (Dkt. Nos. 2, 2-1 and 4.) For the following reasons, the Court will grant Plaintiff's first IFP application (Dkt. No. 2); deny her second IFP application (Dkt. No. 2-1) as moot; recommend dismissal of her three complaints (Dkt. Nos. 1, 1-1, and 1-2) with prejudice for failure to state a claim; and deny her motion for the appointment of counsel (Dkt. No. 4) without prejudice.

### I. IFP APPLICATION

**\*2** A court may grant in forma pauperis status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). After reviewing Plaintiff's first IFP Application, the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's IFP application (Dkt. No. 2) is granted and her second application (Dkt. No. 2-1) is denied as moot.

### II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for in forma pauperis, 28 U.S.C. § 1915(e) directs that when a plaintiff proceeds in forma pauperis, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted). Although extreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and the parties have had an opportunity to respond, Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. See, e.g., Thomas v. Scully, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint sua sponte if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-

harmed-me accusation." *Id.* In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Where a plaintiff proceeds pro se, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A pro se complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## III. PLAINTIFF'S COMPLAINTS

### A. 42 U.S.C. § 1983 Complaint

**\*3** Plaintiff alleges that when she calls the police, they refuse to come, lie about coming, or refuse to investigate out of retaliation because she called the police on police officers for running someone off the road, and taped the beating by the police of a teen on Butternut Street. (Dkt. No. 1 at ¶ 4.) Plaintiff alleges that the police also refuse to help her when she walks in the police station, and that her family is victimized by police officers failure to investigate and act on her reports. *Id.* at ¶ 5. Plaintiff also alleges that the 911 center personnel try to refuse her calls. *Id.* at ¶ 4.

The relief sought by Plaintiff is to have the police officers do their jobs, take her reports, and treat Plaintiff and her family with respect. *Id.* at ¶ 6. Plaintiff also asks for $3,000,000 in damages. *Id.*

### B. Title VII Complaint

Plaintiff alleges retaliatory discrimination against her by Defendants on account of her race or color, income, retaliation, and education in violation of Title VII. (Dkt. No. 1-1 at ¶ 6.) Plaintiff claims that when she goes to the police station for assistance they refuse help and allow criminals to violate her and her family. *Id.* at ¶ 8. She further claims that the police refuse to take her reports, refuse to investigate, refuse to allow her to speak to an investigator, retaliate against her, and allow criminals to get away with violating her. *Id.* at ¶ 9. Plaintiff asks that the police officers and 911 operators be held accountable and not retaliate against her, and that she be awarded $3,000,000 in damages.

### C. ADA Complaint

Plaintiff alleges she is disabled with post traumatic stress disorder, depression, anxiety, arthritis, migraines/brain cancer, lung and heart cancer, a joint disorder, and insomnia. (Dkt. No. 1-2 at ¶ 4.) Plaintiff claims that the police have retaliated against her by delaying or not showing up and refusing to take her report and telling her to leave when she comes to the police station. Plaintiff seeks relief in the form of an end to the retaliation and that the police officers and 911 operators be held accountable. *Id.* at ¶ 7. Plaintiff also seeks $3,000,000 in compensatory damages. *Id.*

## IV. ANALYSIS

### A. 42 U.S.C. § 1983 Claim

#### 1. Syracuse Police Department and the Chief of Police

Plaintiff has sued one or the other of, or both the Syracuse Police Department and the Chief of Police. (Dkt. No. 1 at ¶ 3.) Although a municipality is subject to suit pursuant to § 1983, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located. *See Krug v. County of Rennselaer*, 559 F.Supp. 2d 223, 247 (N.D.N.Y. 2008) (citing *Orraca v. City of N. Y.*, 879 F.Supp. 148 (S.D.N.Y. 1995) (police department and police precincts are not suable entities separate from the City)). Therefore, the Court recommends that the Syracuse Police Department be dismissed from the action.

The Court would recommend dismissal of Plaintiff's claim even if Plaintiff had correctly named the City of Syracuse as defendant. Pursuant to the standard for establishing municipality liability laid out in *Monell*, 436 U.S. at 658, in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. 658); *see also Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.") A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989). To establish causation, there must "at the very least be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma v. Tuttle*, 471 U.S. 808, 823 (1985). Plaintiff has failed to identify or allege any facts showing that the alleged refusal of the unidentified Syracuse police officers to take or investigate her reports was connected in any way to the existence of any municipal policy or custom of the City of Syracuse or the result of a failure to properly train, supervise, or hire the police officers.

**\*4** The Court also recommends dismissal of Plaintiff's claim as against the Chief of the Syracuse Police Department. "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). "Holding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." *Groves v. Davis*, No. 9:11-

CV-1317 (GTS/RFT), 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) [3] (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)); *see also Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (a "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections ... in a § 1983 claim") (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)). Therefore, "a plaintiff must ... allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

The Second Circuit has held that personal involvement by a supervisor necessary to state a claim under § 1983 may be found where: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." *Colon*, 58 F.3d at 873. [4] Plaintiff's complaint is devoid of allegations plausibly showing the existence of any of the *Colon* criteria in this case.

As noted above, a pro se plaintiff should generally be granted leave to amend her or his complaint unless the problem with a claim is substantive such that a better pleading will not cure it. *Cuoco*, 222 F.3d at 112. The Court finds that allowing Plaintiff to amend his § 1983 claim against the Police Department and/or its Chief, or the City of Syracuse were it to be named as a party, would be futile in this case. Plaintiff claims that police officers refused to accept and investigate her reports. (Dkt. No. 1.) However, it is well established that "[t]here is no ... constitutional right to an investigation by government officials." *Troy v. City of New York*, No. 13-cv-5082 (AJN), 2014 WL 4804479, * 6 (S.D.N.Y. Sept. 25, 2014) (quoting *Stone v. Dept. of Investigation of City of New York*, No. 91-cv-2471 (MBM), 1992 WL 25202, at * 2 (S.D.N.Y. Feb. 4, 1992)); *see also Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35-36 (2d Cir. 2010) (finding that parents did not have a protected property interest in an investigation into their son's death); *Rodrigues v. Village of Larchmont*, N.Y., 608 F.Supp. 467, 472 (S.D.N.Y. 1985) (dismissal of claim against police department for

refusing to allow plaintiff to file a complaint and refusal to investigate on the ground that "[t]here is certainly no constitutional right to be protected from criminal activity").

**\*5** In light of the foregoing, the Court recommends that the dismissal of Plaintiff's § 1983 claim against the Syracuse Police Department (City of Syracuse) and the Chief of Police be with prejudice.

## 2. 911 Call Center

Plaintiff has also sued the 911 Administration Center, alleging that call officers tried to refuse to take her calls. (*See generally* Dkt. No. 1.) As with the Syracuse Police Department, the Department of Emergency Communication —911 Center ("911 Call Center") is not an independent suable entity but rather a department of Onondaga County. *See* http:.www.ongov.net/911/ (last visited on July 20, 2016). Therefore, the proper defendant with respect to Plaintiff's claim against the 911 Call Center would be Onondaga County, and the Court recommends dismissal of the three complaints against the 911 Administration Center. *See, e.g., Pazaras v. Onondaga County*, No. 5:14-CV-1227 (DNH), 2016 WL 297423 (N.D.N.Y. Jan. 25, 2016) (Onondaga County the named defendant on a claim against the Onondaga County 911 Call Center).

The Court would recommend dismissal of Plaintiff's claim even if Plaintiff had correctly named Onondaga County as defendant. The complaint does not contain allegations plausibly showing that the alleged deprivation of Plaintiff's constitutional rights with respect to the 911 Call Center "was caused by a governmental custom, policy, or usage of [the County of Onondaga]," *Jones*, 691 F.3d at 80, or inadequate training, supervision, or hiring of 911 Call Center call operators. Plaintiff's complaint does not allege facts describing the reason or reasons for her calls to the 911 Center. (*See* Dkt. No. 1.) Moreover, the sole allegation in Plaintiff's complaint as to the 911 Center call officers is that "the 911 center personal (sic) try to refuse my calls and I am tired of the retaliation." which Plaintiff has alleged is for her reports to the police of police misconduct. Plaintiff has not alleged that she sustained any damages as a result of the call operations trying not to take her calls, and damages is an element of claims under

§ 1983. *See Doe v. City of Waterbury*, 453 F. Supp. 2d 537, 542 (D. Conn. 2006).

Because there are no allegations in Plaintiff's complaint from which the Court could surmise that if granted leave to amend to name Onondaga County as a defendant and state a municipal liability claim against the County under § 1983, she might be able to do so, the Court recommends that Plaintiff's § 1983 claim against the 911 Administration Center (Onondaga County) be dismissed with prejudice.

### B. Title VII Claim

In what Plaintiff has labeled a Title VII claim, she alleges that the police turn her away and refuse to take her reports, refuse to investigate, refuse to allow her to speak to an investigator, retaliate against her, and allow criminals to get away with violating her rights. (*See generally* Dkt. No. 1-1.) Under Title VII, it is unlawful for an employer to discriminate against any individual with regard to compensation and terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). In order to state a claim under Title VII, Plaintiff must show that she was a member of a protected class, she was qualified for a position of employment, she suffered an adverse employment action, and the adverse action occurred under circumstances giving rise to an inference of discriminatory intent. *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

**\*6** Plaintiff has alleged that she is a member of a protected class (race or color). However, there are no allegations in the complaint plausibly showing that the allegations against Defendants have anything whatsoever to do with an employment situation or with employment discrimination. Furthermore, individuals are not subject to liability under Title VII; thus to the extent Plaintiff intends to assert a Title VII claim, including any retaliation claim against the Syracuse Police Chief, she would be unable to do so in any event. *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009) (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

Based upon the foregoing, the Court recommends that Plaintiff Title VII complaint (Dkt. No. 1-1) be dismissed with prejudice.

## C. ADA Claim

In her ADA complaint, Plaintiff alleges numerous physical and mental disabilities. (Dkt. No. 1-2 at ¶46.) The sole allegations in the complaint are that when Plaintiff calls the police for assistance, the officers delay or do not show up, and when she goes to the police station, they refuse to take her report and tell her to leave the building. *Id.* at ¶ 6. Plaintiff does not allege facts plausibly showing a relationship between her disabilities and the police officers' actions. Although Plaintiff seeks damages from the 911 Administration Center, there are no factual allegations of wrongdoing by the 911 Call Center in the complaint. (*See generally* Dkt. No. 1-2.)

The ADA provides protection against discrimination based upon disability. 42 U.S.C. § 12101, *et seq.* Title II of the ADA, which covers public services and programs, is the only section of the ADA that could conceivably apply to Plaintiff's claim. 42 U.S.C. § 12182. Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

To state a claim under Title II of the ADA, Plaintiff "must demonstrate that (1) [she is a] qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that [she was] denied the opportunity to participate or benefit from defendants' services, programs, or activities, or [was] discriminated against by defendants, by reason of [her] disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272-73 (2d Cir. 2003). "Qualified individual with a disability" has been defined by Congress to refer to apply to "an individual with a disability who ... meets the essential eligibility requirements" established for receipt of services, programs, or activities provided by a public entity. 42 U.S.C. § 12132(2). "Public entity" is defined as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government ...." 42 U.S.C. § 12131.

Actions of police departments have been found to fall within the scope of ADA Title II, although as discussed above, the City of Syracuse would be the proper party defendant. *See Williams v. City of New York,* 121 F.Supp. 3d 354, 364 (S.D.N.Y. 2015). The Onondaga County 911 Call Center also falls within the Title II definition of public entity, although Onondaga County would be the proper

party defendant. Parties, including the Syracuse Chief of Police Department, may not be sued for violations of ADA Title II in their individual capacities inasmuch as the provision provides for suit only against public entities. *See Green v. City of New York,* 465 F.3d 65, 76 (2d Cir. 2006) (ADA claim dismissed against individual defendant because an individual is not a public entity.)

**\*7** Even assuming for purposes of this initial review that Plaintiff is a qualified individual with a disability and the Syracuse Police Department and Onondaga County are public entities under Title II of the ADA, Plaintiff has failed to allege facts plausibly showing that she was denied the opportunity to participate or benefit from defendants' services, programs, or activities, or was discriminated against by the Syracuse Police of the Onondaga County 911 Call Center by reason of her alleged disabilities. To the contrary, Plaintiff has alleged in her 42 U.S.C. § 1983 complaint that the police officers' actions were acting in retaliation for her reporting of police misconduct. (Dkt. No. 1 at ¶ 4.) Her complaint under Title II of the ADA contains no factual allegations of wrongdoing whatsoever by the 911 Call Center. (Dkt. No. 1-2.) Furthermore, as with the police officers, Plaintiff attributes the 911 callers' attempts to avoid her calls to retaliation for reporting police misconduct. (Dkt. No. 1 at ¶ 4.)

Based upon the foregoing, the Court recommends dismissal of Plaintiff's third complaint for failure to state a claim. Because Plaintiff has clearly attributed the police officers' and the 911 operators' allegedly wrongful actions to retaliation for reporting police misconduct, and not her alleged disabilities, the Court recommends that the dismissal be with prejudice.

## D. Motion for Appointment of Counsel

Plaintiff has moved for appointment of counsel and submitted correspondence from attorneys declining her request for representation in support of her motion. (Dkt. No. 4.) Even if the Court were not recommending dismissal of Plaintiff's Complaint with prejudice, a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin,* 114 F.3d 390, 392 (2d Cir. 1997) (court must look to the likelihood of merit of the underlying dispute in determining whether to appoint counsel). Therefore, the motion is denied. The denial is without prejudice so that Plaintiff will not be precluded from making a subsequent motion for

Case 5:17-cv-01186-GLS-TWD   Document 11   Filed 04/09/18   Page 18 of 37
Coleman v. Syracuse Police Department, Not Reported in F.Supp.3d (2016)

2016 WL 4411339

appointment of counsel in the event the District Court allows the action to proceed.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's first IFP Application (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's second IFP Application (Dkt. No. 2-1) is **DENIED AS MOOT**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 4) is **DENIED WITHOUT PREJUDICE**; and it is

**RECOMMENDED** that Plaintiff's civil rights complaint 42 U.S.C. § 1983 complaint (Dkt. No. 1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that Plaintiff's Title VII complaint (Dkt. No. 1-1) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that Plaintiff's Title II of the ADA complaint (Dkt. No. 1-2) be **DISMISSED WITH PREJUDICE** upon initial review under 28 U.S.C. § 1915(e); and it is further

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 4411339

Footnotes

1    Records from the Clerk's Office show that this lawsuit is one of five presented to the Clerk's Office for filing on July 8, 2016. Each appears to contain multiple complaints. *See Coleman v. Engle*, No. 5:16-cv-833 (MAD/DEP) (challenging the handling of her family's public assistance benefits, including charges of errors, fraud, and theft of benefits by Onondaga County Social Services workers); *Coleman v. Detter*, No. 5:16-cv-834 (MAD/DEP) (suing attorneys involved in a Family Court child protective proceeding involving Plaintiff and her children); *Coleman v. Sutkowsky*, No. 5:16-cv-837 (MAD/DEP) (claim that defendants have ignored her welfare fraud complaints against Onondaga County Social Services workers); and *Coleman v. Olinsky*, No. 5:16-cv-838 (MAD/DEP) (lawsuit against Plaintiff's attorneys claiming that benefits were unlawfully taken, overcharging on fees, and benefits wrongfully unreported). Plaintiff earlier presented two lawsuits containing multiple complaints for filing on June 22, 2016. *See Coleman v. Levandowski*, No. 5:16-cv-734 (NAM/ATB) (claims against social workers involved in child protective proceeding involving Plaintiff and her children); and *Coleman v. Hanuszczak*, No. 5:16-cv-735 (NAM/ATB) (suit against Family Court Judge in child protective proceeding).

2    Although the Syracuse Police Department is the named Defendant, Plaintiff has listed "Chief of Police" as the official position of Defendant. (Dkt. No. 1 at ¶ 3.) In light of Plaintiff's pro se status, the Court will review the complaint as though both the Syracuse Police Department and the Chief of Police had been named as Defendants. Plaintiff has also named the 911 Administration Center as a Defendant. *Id.* Plaintiff has listed the "Call Operators" as the official position of the 911 Administration Center. *Id.* Inasmuch as Plaintiff has not identified any specific call operators, the Court will treat the 911 Administration Center as the sole Defendant in its analysis. *Id.*

3    The Clerk will be directed to provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

4    The Second Circuit has expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

**Coleman v. Syracuse Police Department, Not Reported in F.Supp.3d (2016)**

2016 WL 4411339

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

---

2013 WL 880329
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John POSITANO, Plaintiff,
v.
State of NEW YORK, David Freundlich,
Theresa Whelan, Both Individually and
in their Officially Capacity, Todd Zimmer,
Todd Zimmer And Associates, Margaret
"Peggy" Gade, and Liz Smith, Defendants.

No. 12–CV–2288 (ADS)(AKT).
|
March 7, 2013.

**Attorneys and Law Firms**

John A. Positano, Esq., Farmingville, NY, pro se.

New York State Attorney General, by: Ralph Pernick, Assistant New York State Attorney General, for the Defendants State of New York, David Freundlich and Theresa Whelan 200 Old Country Road, Suite 240.

Margaret Gade, Selden, NY, pro se.

Todd Zimmer, Todd Zimmer and Associates, Liz Smith, No Appearances.

**Opinion**

**MEMORANDUM OF DECISION AND ORDER**

SPATT, District Judge.

**\*1** On May 9, 2012, the Plaintiff John Positano, a *pro se* attorney ("the Plaintiff"), commenced this action by filing a Complaint against the Defendants State of New York ("the State"), New York State Family Court Judge David Freundlich, individually and in his official capacity ("Judge Freundlich"), New York State Family Court Judge Theresa Whelan, individually and in her official capacity ("Judge Whelan"), Todd Zimmer ("Zimmer"), Todd Zimmer and Associates ("Zimmer and Associates"), Margaret (Peggy) Gade ("Gade") and Liz Smith ("Smith," and collectively, "the Defendants"). The Plaintiff seeks relief pursuant to 42 U.S.C. §§ 1983 and 1985, the Americans with Disabilities Act ("ADA"), 42

U.S.C. §§ 12201 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Presently before the Court is a motion by the State, Judge Freundlich and Judge Whelan (collectively, "the moving Defendants") to dismiss this action for lack of subject matter jurisdiction and for failure to state a claim, pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(1) and 12(b)(6). The moving Defendants also seek a "leave to file" filing injunction against the Plaintiff. For the reasons set forth below, the Court grants the moving Defendants' motions.

**I. BACKGROUND**

The Court need not provide a lengthy discussion of the facts to resolve this motion. Relevant here is that the Plaintiff is suing Judge Freundlich and Judge Whelan, two Suffolk County Family Court Judges, who allegedly violated his rights under the ADA and Rehabilitation Act during the course of two Family Court proceedings that were brought against the Plaintiff and ultimately dismissed. The first proceeding, before Judge Freundlich, occurred in late 2009. The second proceeding, before Judge Whelan, occurred in April 2010. The Plaintiff's Complaint makes no specific allegations with respect to the State nor does it provide a legal basis for naming the State in this action.

**II. DISCUSSION**

*A. Legal Standard*

**1. Motion to Dismiss Standard Under Fed.R.Civ.P. 12(b)
(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard set forth below, except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* at 113. In adjudicating a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court

may consider matters outside the pleadings. *Makarova,* 201 F.3d at 113.

### 2. Motion to Dismiss Standard Under Fed.R.Civ.P. 12(b) (6)

It is well-established that a complaint should be dismissed under Fed.R.Civ.P. 12(b)(6) only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In deciding whether a complaint meets this threshold, the Court is required to accept the material facts alleged in the complaint as true and draw all reasonable inferences in the Plaintiffs favor. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). In its analysis, the Court may refer "to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Tech., Inc.,* 987 F.2d 142, 150 (2d Cir.1993); *see also Karmilowicz v. Hartford Fin. Servs. Group,* No. 11–3284–cv, 2012 U.S.App. LEXIS 18394, at *5–6 (2d Cir. Aug. 30, 2012). Moreover. "[w]hen a plaintiff amends its complaint while a motion to dismiss is pending, ... the 'court then has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion as moot to considering the merits of the motion in light of the amended complaint." *Roller Bearing Co. of Am., Inc. v. Am. Software,* Inc., 570 F.Supp.2d 376, 384 (D.Conn.2008) (citation and internal quotation marks and altercations omitted). Only if this Court is satisfied that the Complaint cannot state any set of facts that would entitle the Plaintiff to relief will it grant dismissal pursuant to Rule 12(b)(6). *Hertz Corp. v. City of New York,* 1 F.3d 121, 125 (2d Cir.1993).

### 3. Motion for a "Leave to File" Filing Injunction Standard

**\*2** "[A] district court may, in its discretion, impose sanctions against litigants who abuse the judicial process." *Malcolm v. Bd. of Educ. of the Honeoye Falls–Lima Cent. Sch. Dist.,* No. 10–4287, 2012 U.S.App. LEXIS 26324, at *8 (2d Cir. Dec. 26, 2012) (citation and internal altercations omitted). "Pursuant to that authority, a court may prevent a litigant from filing pleadings, motions or appeals upon a showing of extraordinary circumstances,

such as a demonstrated history of frivolous and vexatious litigation or a failure to comply with sanctions imposed for such conduct." *Id.* at *9 (citation omitted). In addition, instead of "completely foreclosing the filing of designated categories of cases," some "courts have adopted the less drastic remedy of subjecting a vexatious litigant to a 'leave of court' requirement with respect to future filings." *In re Martin–Trigona,* 9 F.3d 226, 228–29 (2d Cir.1993); *see also Malcolm,* 2012 U.S.App. LEXIS at *8–11 (2d Cir. Dec. 26, 2012) (finding a "leave to file" filing sanction to be a reasonable requirement); *O'Diah v. Port Auth. of N.Y. & N.J.,* 10–2271–pr, 2010 U.S.App. LEXIS 27430, at *4 (2d Cir. Dec. 16, 2010) (warning that "the continued filing of duplicative, vexatious, or clearly meritless appeals, motions, or other papers in this Court, will result in the imposition of sanctions, which may include a leave-to-file sanction requiring Appellant to obtain permission from this Court prior to filing any further submissions in this Court").

"Before a filing sanction is imposed [ ] a litigant must be provided notice and an opportunity to be heard." *Malcolm,* 2012 U.S.App. LEXIS at *9. In addition, district courts should consider the following five factors when determining whether to grant a filing injunction:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State DMV,* 396 F.3d 525, 528 (2d Cir.2005). "Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Safir v. United States Lines, Inc.,* 792 F.2d 19, 24 (2d Cir.1986).

**B. As to the Plaintiff's Claims Against Judge Freundlich and Judge Wheelan**

In his Complaint, the Plaintiff alleges that while acting in their judicial capacity as Family Court Judges, Judge Freundlich and Judge Wheelan violated his rights. However, such claims are clearly barred by the doctrine of absolute judicial immunity.

**\*3** In this regard, it is well settled that judges are absolutely immune from suit for any actions taken within the scope of their judicial responsibilities or within his or her jurisdiction. See *Mireles v. Waco,* 502 U.S. 9, 9–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Maestri v. Jutkofsky,* 860 F.2d 50, 52–53 (2d Cir.1988). The rule of absolute judicial immunity is necessary because "principled and fearless decision-making" will be compromised if a judge "fears that unsatisfied litigants may hound him with litigation charging malice or corruption." *Vasile v. Dean Witter Reynolds Inc.,* 20 F.Supp.2d 465, 489 (E.D.N.Y.1998) (internal quotations and citation omitted).

The Supreme Court has emphasized that the scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Stump v. Sparkman,* 435 U.S. 349, 356–57, 55 L.Ed.2d 331, 98 S.Ct. 1099 (1978) (citation omitted). Absolute immunity exists "however erroneous the act may have been, however injurious in its consequences it may have proved to the plaintiff." *Cleavinger v. Saxner,* 474 U.S. 193, 199, 106 S.Ct. 496, 500, 88 L.Ed.2d 507, 513 (1985) (quoting *Bradley v. Fisher,* 80 U.S. 335, 347, 20 L.Ed. 646, 649 (1871)). "The cloak of immunity is not pierced by allegations of bad faith or malice." *Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997). Indeed, the doctrine of judicial immunity is so expansive that it is overcome only when (1) the action is nonjudicial, i.e., not taken in the judge's judicial capacity; or (2) the action, although judicial in nature, is performed in the complete absence of any jurisdiction. *Mireles,* 502 U.S. at 11–12.

"The Supreme Court has applied a 'functional' approach in deciding whether an act is judicial for purposes of immunity." *Vasile,* 20 F.Supp. at 489 (citing *Cleavinger,* 474 at 200). To determine whether a judge is entitled to absolute immunity the Court must examine the nature of the responsibilities at issue. *Id.* The Court should consider the nature of the action taken by the Judge, as well as the expectations of the parties, and the adversary nature of the process. *Id.*

Of importance, "[f]amily court judges are entitled to the same protections from harassment and intimidation resulting from actions taken in their judicial capacity as those afforded to other state and federal judges. Given the inherently emotional nature of their work, family court judges may be particularly susceptible to harassment." *McKnight v. Middleton,* 699 F.Supp.2d 507, 524 (E.D.N.Y.2010) (quoting *Lewittes v. Lobis,* 04 Civ. 0155(JSR) (AJP), 2004 U.S. Dist. LEXIS 16320, at \*15 (S.D.N.Y. Aug. 19, 2004)).

Here, the Plaintiff's claims against Judge Freundlich and Judge Whelan stem from their actions while acting as Family Court judges. Specifically, the Plaintiff claims that Judge Freundlich illegally issued a court order directing the Plaintiff to neither see nor communicate with his adult daughters, one of whom was disabled, following the November 18, 2009 filing of a Family Offense Petition. The petition accused the Plaintiff of molesting his children when they were young. Further, the Plaintiff claims that Judge Whelan illegally issued a court order barring the Plaintiff from accessing his home or communicating with his adult children after the filing of a second Family Offense Petition that had similar accusations as the first petition.

**\*4** Nothing in this case suggests that Judge Freundlich or Judge Whelan were without jurisdiction or that they acted outside their judicial capacity. See *Vasile,* 20 F.Supp.2d at 489. Indeed, a court order issued by a Family Court judge in response to the serious accusations raised in a Family Offense petition are clearly a judicial action, and clearly within the scope of the judge's jurisdiction. Thus, while the Plaintiff asserts claims against Judge Freundlich and Judge Whelan in their individual and official capacities, judicial immunity protects judges acting in that role. See *McKnight,* 699 F.Supp.2d at 525 (finding that judicial immunity protects Family Court judges acting in their individual and official capacities); *Cage v. Balkin,* 10–CV1324(CBA)(LB), 2010 U.S. Dist. LEXIS 30107, at \*5 (E.D.N.Y. Mar. 25, 2010) ("As the alleged wrongdoing of defendants Balkin and Kahlon are acts performed in their judicial capacity during state Family Court proceedings, plaintiff's claims are foreclosed by absolute immunity.")

The Plaintiff's argument that the ADA somehow permits his lawsuit in spite of the doctrine of absolute judicial immunity is unavailing. Courts in this Circuit have

recognized that a plaintiff may not bring a lawsuit against a judge for those actions the judge took in his judicial capacity, even when those actions allegedly violated the plaintiff's rights under the ADA. *See, e.g., Bobrowsky v. Yonkers Courthouse,* 777 F.Supp.2d 692 (S.D.N.Y.2011) (holding that an action brought against three state court judges must be dismissed under the doctrine of absolute judicial immunity where a *pro se* Plaintiff brought an action against them for violations of the First, Fourth Fifth and Fourteenth Amendments of the United States Constitution, pursuant to § 1983 and the ADA), *Roe v. Johnson,* 334 F.Supp.2d 415, 423 (S.D.N.Y.2004) ("Roe seeks damages pursuant to Section 1983 against individual members of the Committee on the ground that their inquiries during the January 27, 2003 hearing and in subsequent letters violate her rights under the ADA. It is 'well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages.' ") (citation omitted).

The Plaintiff's reliance on *Weixel v. Bd. of Educ. of N.Y.,* 287 F.3d 138, 150 (2d Cir.2002) is misplaced, because that case did not involve a lawsuit brought against judges, but rather involved an action brought against a school district's board of education and its administrators. For similar reasons, the Plaintiff's reliance on *Reg'l Econ. Cmty. Action Program v. City of Middletown,* 294 F.3d 35 (2d Cir.2002) is also misplaced, as the plaintiff's lawsuit was not brought against judges, but brought against a city, the city's planning board and the city's mayor.

The Plaintiff's argument that the absolute judicial immunity doctrine does not apply because of the absence of all jurisdiction must also fail. Section 812(1) of the New York State Family Court Act (the "FCA") grants jurisdiction to the Family Court as follows:

> **\*5** The family court and the criminal courts shall have concurrent jurisdiction over any proceeding concerning acts which would constitute disorderly conduct, harassment in the first degree, harassment in the second degree, aggravated harassment in the second degree, sexual misconduct, forcible touching, sexual abuse in the third degree, sexual abuse in the second degree ...,

stalking in the first degree, stalking in the second degree, stalking in the third degree, stalking in the fourth degree, criminal mischief, menacing in the second degree, menacing in the third degree, reckless endangerment, criminal obstruction of breathing or blood circulation, strangulation in the second degree, strangulation in the first degree, assault in the second degree, assault in the third degree or an attempted assault, criminal obstruction of breathing or blood circulation or strangulation between spouses or former spouses, or between parent and child or between members of the same family or household....

FCA § 812 further states that "[i]n any proceeding pursuant to this article, a court shall not deny an order of protection, or dismiss a petition, solely on the basis that the acts or events alleged are not relatively contemporaneous with the date of the petition, the conclusion of the fact-finding or the conclusion of the dispositional hearing." FCA § 812 defines "members of the same family or household" as including

> (a) persons related by consanguinity or affinity;

> (b) persons legally married to one another;

> (c) persons formerly married to one another regardless of whether they still reside in the same household;

> (d) persons who have a child in common regardless of whether such persons have been married or have lived together at any time; and

> (e) persons who are not related by consanguinity or affinity and who are or have been in an intimate relationship regardless of whether such persons have lived together at any time.

Here, the Family Offense petitions accused the Plaintiff of committing acts against his wife and one of his daughters that were covered under § 812 of the FCA. Moreover, it is without question that the Plaintiff and his daughters, although adults, would be considered members of the family or household, as they are persons related

by consanguinity. As such, Judge Freundlich and Judge Whelan, as Family Court judges, had jurisdiction over the Family Court proceedings and therefore had the authority to issue the orders at issue in this case.

Thus, Judge Freundlich and Judge Whelan are entitled to absolute judicial immunity with regard to the Plaintiff's claims. Accordingly, the claims against Judge Freundlich and Judge Whelan are dismissed.

### C. As to the Plaintiff's Claims Against the State

The Plaintiff's claims against the State must also be dismissed. Under the Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI; *see also Gollomp v. Spitzer,* 568 F.3d 355, 365 (2d Cir.2009). In other words, "the Eleventh Amendment means that, as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp,* 568 F.3d at 366 (citation and internal quotation marks and alterations omitted).

**\*6** The Plaintiff's § 1983 claims against the State are barred by the Eleventh Amendment sovereign immunity, for "a state is not a 'person' amenable to suit under § 1983." *Caroselli v. Curci,* 371 F. App'x 199, 202 (2d Cir.2010). Moreover, recovery against the State under a theory of *respondeat superior,* as the Plaintiff appears to raise here, is not permitted by § 1983. *Monell v. Department of Social Servs. of City of New York,* 436 U.S. 658, 691–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Recovery against the State under § 1985 is also barred by Eleventh Amendment sovereign immunity. *See Gollomp,* 568 F.3d at 368.

As for the Plaintiff's ADA claims, "[i]n *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), the Supreme Court established a three-step process for analyzing whether Congress has validly abrogated a state's sovereign immunity from suit in the context of a particular Title II claim [under the ADA]" *Mary Jo C. v. N.Y. State & Local Ret.* Sys., Docket No. 11–2215, 2013

U.S.App. LEXIS 2013, at \*12 (2d Cir. Jan. 29, 2013). In this regard, the Supreme Court held that

> [a] court must determine ..., on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at \*13 (quoting *Georgia,* 546 U.S. at 159) (internal alterations omitted). "Thus, if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end." *Id.*

Here, the Plaintiff has failed satisfy the first step, as he has failed to state a Title II claim under the ADA. Specifically, his Complaint does not explain how the State's alleged conduct violated Title II. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The Plaintiff does not allege that he is disabled, but rather, states that one of his daughters is disabled and that during her hospitalization she was denied services. The Plaintiff neither provides factual allegations concerning (1) whether the two facilities where his daughter was hospitalized were public entities; (2) which services, programs or activities she was being denied or excluded from participating in; and (3) whether her exclusion or denial from said services, programs or activities was because of her disability. Therefore, the Plaintiff's claims against the State of New York must be dismissed.

### D. As to the Moving Defendants' Motion for a "Leave to File" Filing Injunction

**\*7** Prior to bringing this lawsuit, within the span of eleven years, the Plaintiff has commenced at least three other actions in the United States District Court for the Eastern District of New York on behalf of himself and his family. On September 28, 2001, the

Plaintiff, on behalf of himself, his daughters and his then-wife, Marie Positano, filed a Complaint in which he named the State as one of the defendants. (Pernick Decl., A1.) In that case, the Plaintiff asserted claims under §§ 1983, 1985 and 1986, as well as the ADA and the Rehabilitation Act, and claimed that his daughters "were deprived of their rights to appropriate educational services and, in retaliation for having sought such services, defendants falsely and maliciously named their parents, Marie and John Positano, in New York State Family Court educational neglect petitions." (Pernick Decl. A1, A5.) However, the Court (Seybert, J.) found that "the Eleventh Amendment bars all of the plaintiffs' state law claims as asserted against the State." (Pernick Decl., A15.)

The Plaintiff was granted leave to file an amended complaint, which he did on October 21, 2002. (Pernick Decl., A21.) In a decision dated September 30, 2003, the Court (Seybert, J.) dismissed the Plaintiff's § 1983 claims against the State of New York, because they were barred by Eleventh Amendment immunity. (Pernick Decl., A35, A45.) The Court also dismissed the Plaintiff's ADA, Rehabilitation Act, and §§ 1985 and 1986 claims against the State, because the Plaintiff asserted no allegations to support these claims. (Pernick Decl., A28, A41.)

On November 8, 2002, the Plaintiff commenced a separate lawsuit on behalf of his thenwife, Marie Positano, and one of his daughters. (Pernick Decl., A50, A52.) The Complaint alleged that the Plaintiff's wife and his daughter were discriminated against in violation of the ADA, the Rehabilitation Act and §§ 1983, 1985, 1986 and 1988. (Pernick Decl., A52.) The Appellate Division Second Judicial Department of the State of New York ("the Appellate Division") was named as one of the defendants in the action. (Pernick Decl., A50.)

In a decision dated September 30, 2003, the Court (Seybert, J.) found that "the Appellate Division [wa]s entitled to absolute judicial immunity for statements made in the course of its duties." (Pernick Decl., A57, A69.) It further determined that "the Appellate Division [wa]s a state court, which [wa]s an arm of the State, and [wa]s entitled to Eleventh Amendment immunity from suit in federal court." (Pernick Decl., A57.) For these reasons, among others, the Court dismissed the complaint against the Appellate Division in its entirety. (Pernick Decl., A58.)

On November 16, 2007, the Plaintiff commenced a third action on behalf of himself, his then-wife, Marie Positano, and their two daughters, in the United States District Court of the Eastern District of New York. (Pernick Decl., A70.) The Plaintiff named the State and State University of New York at Stony Brook ("SUNY") as defendants and asserted claims under §§ 1983, 1985 and 1988, as well as the ADA and the Rehabilitation Act. (Pernick Decl., A70–71.) In a decision dated September 30, 2008, the Court (Seybert, J.) first noted:

> **\*8** Plaintiffs are no strangers to the courts. In 2001, these four Plaintiffs brought suit against various individual defendants as well as Suffolk County, New York State, and agencies of the County and State, alleging violations of the IDEA, ADA, Rehabilitation Act, Sections 1983, 1985, and 1986. In 2002, Marie Positano and [her daughter] commenced an action against, among others, a law firm and the Second Department Appellate Division alleging discrimination in violation of the ADA, Rehabilitation Act, and Sections 1983, 1985, 1986 and 1988. Accordingly, Plaintiffs are familiar with many of the principles set forth in this Order.

(Pernick Decl., A71, A102, citations omitted.)

The Court then stated "[a]s was previously explained to these Plaintiffs, which includes counsel, the state and its agencies are immune from Section 1983 claims pursuant to the Eleventh Amendment." (Pernick Decl., A79–80.) As such, the Court held that the "Section 1983 claims against [the State] and SUNY [we]re barred by the Eleventh Amendment and because they [we]re not 'persons within Section 1983.'" (Pernick Decl., A81.) The Court also dismissed the claims brought under § 1985, because the complaint failed to state a § 1983 claim and because the complaint was "devoid of any allegations that Defendants conspired to deprive Plaintiffs of their constitutional rights." (Pernick Decl., A89–90 .) For similar reasons, the Court dismissed the Rehabilitation Act claim because the allegations in the Complaint did not establish or give rise to the inference that any discriminatory or retaliatory

conduct occurred. (Pernick Decl., A97.) Finally, the Court dismissed the ADA claims against the State and SUNY, because the claims were "based on access to post-secondary education, which is not a fundamental right protected by the Fourteenth Amendment." (Pernick Decl., A94–95.) Hence, the Court found these claims to be "barred by the Eleventh Amendment because Congress' purported abrogation of sovereign immunity in such a situation [wa]s not valid." (Pernick Decl., A94–95.) The Court concluded its Order by warning that "frivolous filings will be dismissed with prejudice and may result in sanctions." (Pernick Decl., A101.)

In light of these previous lawsuits, the Court, in its discretion, finds that a "leave to file" filing injunction is appropriate here. First, the Court notes that the Plaintiff was given notice and an opportunity to be heard on this issue, as he was able to and did address the moving Defendants' motion in his opposition papers. *See Robert v. Dep't of Justice,* 439 F. App'x 32, 34 (2d Cir.2011). In addition, as aforesaid, the Plaintiff was previously warned in previous actions that frivolous filings could result in sanctions. (Pernick Decl., A101.)

Moreover, the Court finds that a review of the five factors that a district court should consider "in determining whether or not to restrict a litigant's future access to courts" weighs in favor of granting a "leave to file" filing injunction. *Safir,* 792 F.2d at 24. These factors, as discussed above are:

> **\*9** (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Id.* at 24.

In this regard, the Plaintiff has now commenced four separate litigations on behalf of himself and his family in which he has named the State, its agencies and/or its judges as defendants. The Plaintiff continues to assert similar claims under the ADA, the Rehabilitation Act and §§ 1983 and 1985, despite already having had his previous actions dismissed under the doctrines of Eleventh Amendment immunity and absolute judicial immunity and for his failure to allege any facts that would state a claim under these statutes. Second, there is no objective good faith basis for the Plaintiff to believe that he could prevail in this action, given the clear state of the law with respect to the absolute judicial immunity and Eleventh Amendment immunity doctrines. This is especially true given that (1) the Plaintiff, although *pro se,* is an attorney, and (2) these doctrines have been explained to him in previous orders issued by the Honorable District Court Judge Joanna Seybert of this Court. Third, the Plaintiff is not represented by another attorney, but instead, is representing himself and his family in these lawsuits. Fourth, through this action and the previous ones that he has brought, the Plaintiff has demonstrated an inability to grasp that his claims lack merit, thereby causing needless expense and burden to the other parties and to this Court. Lastly, as the other four factors weight heavily in favor of granting a "leave to file" filing injunction, the Court believes that monetary sanctions will not be adequate to protect the courts and other parties from future meritless lawsuits.

Accordingly, the Court grants the moving Defendants' motion for a "leave to file" filing injunction. The Plaintiff is enjoined from filing any further suits against the State of New York, its judges and its agencies without first seeking leave of the Court. In this regard, the Plaintiff is directed to first present any complaint to a judge of this Court for review, but is not permitted to serve the Complaint unless such judge affirmatively authorizes him to do so. The terms of this filing injunction applies only to actions brought by the Plaintiff, pro se, and on behalf of his family.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the moving Defendants' motion to dismiss the Complaint as against Judge Freundlich, Judge

2013 WL 880329

Whelan and the State of New York is granted, and it is further

 **\*10  ORDERED,** that the Plaintiff is enjoined from filing any further suits against the State of New York, its judges and its agencies without first seeking leave of this Court. The Plaintiff is directed to first present any complaint to a judge of this Court for review, and is not permitted to serve the complaint unless such judge affirmatively authorizes him to do so. The terms of this filing injunction applies only to actions brought by the Plaintiff, pro se, and on behalf of his family.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 880329

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1281444
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Elizabeth A. RICHTER, Plaintiff,

v.

The CONNECTICUT JUDICIAL
BRANCH, et al., Defendants.

Civil No. 3:12cv1638 (JBA).
|
Signed March 27, 2014.

**Attorneys and Law Firms**

Elizabeth A. Richter, Canton, CT, pro se.

Maura Murphy–Osborne, Attorney General's Office,
Diane C. Mokriski, O'Connell, Attmore & Morris, LLC,
Hartford, CT, for Defendants.

**Opinion**

**RULING GRANTING DEFENDANTS'
MOTION TO DISMISS**

JANET BOND ARTERTON, District Judge.

**\*1** Plaintiff, Elizabeth A. Richter, filed an Amended
Complaint [Doc. # 35] against the Connecticut Judicial
Branch (the "Judicial Branch"), Judge Herbert Barall of
the Superior Court (collectively the "State Defendants"
or "State"), and a law firm that formerly represented
her, O'Connell, Attmore, and Morris, LLC ("OAM"),
alleging violations of her rights under the Americans
With Disabilities Act ("ADA"), 42 U.S.C. 12131, *et
seq.*, § 504 of the Rehabilitation Act, 29 U.S.C. §
794, and the Due Process Clause of the Fourteenth
Amendment, arising from her state court divorce and
child-custody proceedings. Plaintiff claims (1) violations
of her Fourteenth Amendment Due Process rights, Title
II of the ADA and retaliation in violation of the ADA
by the Judicial Branch (Count One) and Judge Barall
in his individual and official capacity (Count Four),
and violation of Title III of the ADA and retaliation
in violation of the ADA by OAM (Count Three); (2)
violation of the Rehabilitation Act by the Judicial Branch
(Count Two); (3) intentional infliction of emotional

distress by the Judicial Branch (Count Five), OAM
(Count Six), and Judge Barall (Count Seven).

OAM moves [Doc. # 38] to dismiss the Amended
Complaint for lack of standing and failure to state a
claim, and the State Defendants move [Doc. # 45] to
dismiss on the basis that the relief sought is barred
by the Eleventh Amendment; judicial immunity; the
*Rooker–Feldman* doctrine; and failure to state a claim for
relief. Plaintiff moves [Doc. # 50] to strike the State's
memorandum in support and a number of its exhibits. For
the reasons that follow, Defendants' motions are granted,
and Plaintiff's motion is denied.

**I. Facts Described in the Amended Complaint**
Plaintiff filed for divorce in July 2006 in Connecticut
Superior Court, and during the course of litigation
her then-husband raised her "psychotic illness,"
based on events thirty years earlier, when she had
been "misdiagnosed" and improperly hospitalized.
(Am.Compl.¶¶ 18–19.) As a result, the Judicial Branch
"has perceived the Plaintiff as having a psychiatric
illness that she does not have." (*Id.* ¶ 21.) In addition,
Plaintiff alleges that this discrimination on the basis
of perceived disability has led to her developing
"stress and anxiety" and "Legal Abuse Syndrome, a
form of PTSD." (*Id.* ¶ 22.) Plaintiff developed these
conditions "as a result of discrimination that [Richter] has
experienced and continues to experience as a result of this
misdiagnosis." (*Id.*)

Despite Richter's perceived and actual disabilities, during
her divorce proceedings, "the Superior Court failed to
inform her of her rights and protections under the ADA
and proceeded to deny her access to those rights and
protections from July 2006 up until December 2012." (*Id.*
¶ 25.) Due to her perceived disability, Richter "was denied
the services of the trial court such as family relations,
mediation, special masters, etc. and denied meaningful
participation in pretrial hearings and trial court hearings."
(*Id.* ¶ 35.) Richter alleges that she was "subjected to
harassment and coercion in the form of long and drawn
out proceedings (*id.* ¶ 36), and "the Trial Court allowed
a hostile atmosphere to dominate court proceedings ...
and consistently addressed her in a rude and hostile
manner" (*id.* ¶ 40).

**\*2** From September 2009 through December
2009, Richter made numerous verbal requests for

"accommodation and protection from discrimination under the ADA" and filed motions "For a Referral to the ADA Coordinator" and for "Relief from ADA violations," but these requests and motions were ignored. (*See id.* ¶¶ 44–47 .) On March 8, 2010, Richter filed a Request For Accommodation by Persons With Disabilities Form to the Judicial Branch, requesting "protection from discrimination based upon the perception that she has a mental illness," and "accommodations for the anxiety symptoms she experiences" as a result of this unwarranted perception. (*Id.* ¶ 49; *see also* Request for Accommodation Form, Ex. 8 to Defs.' Mot. to Dismiss.)

On March 19, 2010, Richter provided documentation from her psychiatrist, who recommended that the trial court allow Richter (1) "an assistant to review and clarify what has been said in court," (2) the opportunity "to take brief breaks," (3) "any other accommodations the ADA Coordinator might suggest," and (4) to "[c]onsult with a stigma expert regarding discrimination." (*Id.* ¶ 50.) On June 14, 2010, Richter's requests were denied. (*Id.* ¶ 51.) Richter submitted another request on August 19, 2010, which was also denied. (*Id.* ¶¶ 56–57.) On September 20, 2010, Richter filed a grievance appealing the denial of her requested accommodations. (*Id.* ¶ 59.) On November 9, 2010, Richter received a reply from the Grievance Committee, stating that the Judicial Branch was complying with her requests for accommodations, and had allowed Richter to be assisted "by an individual of your choice during hearings," but there was no record that Richter had done so. (*Id.* ¶ 62.) Richter responded that because "the hostility directed towards me in court is so great as a consequence of a discriminatory attitude, then that makes it difficult for me to even ask for such an accommodation[ ]," and that during a hearing before the trial court in August 2010 "she was denied a break even though she repeatedly requested one" and "even though her ADA Coach was allowed to sit next to the Plaintiff, he was not allowed to speak to her and explain what was being said as the Plaintiff had requested as part of her reasonable accommodations ." (*Id.* ¶ 63.)

In a September 16, 2010 ruling, Judge Barall ruled against Richter and based his decision in part on a "custody evaluation," which "was hearsay, was considerably inaccurate, was not relevant to the issues before the trial court," and in doing so Judge Barall committed "an act of discrimination ... based upon the perception of

[Richter] as having a mental health disability she does not have." (*Id.* ¶ 72.) Judge Barall's ruling referred to Richter's ADA coach as her "sexual partner," which was "an attempt to retaliate against the Plaintiff's ADA coach because of his support of the Plaintiff." (*Id.* ¶ 70.) In subsequent proceedings before Judge Barall, Richter "became temporarily disabled and entitled to reasonable accommodations ... since she required surgery," and repeatedly requested a delay in hearings regarding a motion for attorney's fees, but Judge Barall "continued to rule on Attorney's Fees without allowing her to have a hearing to which she is entitled under the 5th and 14th amendments to the constitution" and "documents were concealed." (*Id.* ¶ 73.)

**\*3** During her appeal of multiple trial court orders, [1] Richter submitted requests for accommodation to the Appellate Court of Connecticut "asking for ADA protection against discrimination" in her appellate cases, but these requests were denied. (*Id.* ¶¶ 77–81.) The Appellate Court "then continued on to rule against the Plaintiff ... without actually considering the issues raised on appeal, and in doing so clearly discriminating against the Plaintiff as a person with a disability." (*Id.* ¶ 81b.)

On December 7, 2012, before Plaintiff filed her Complaint with this Court, a Superior Court judge confirmed Plaintiff's "eligibility for ADA Accommodations and also approved all of the Plaintiff's requested accommodations." (*Id.* ¶ 82.) Shortly, thereafter Richter received additional confirmation of her eligibility for ADA accommodations, and the Judicial Branch "approved all of the Plaintiff's requested accommodations," which were "the very same accommodations that the Plaintiff was asking for in 2009." (*Id.* ¶ 82.)

Although the Judicial Branch has now agreed to provide Richter with the requested accommodations, court personnel had previously been "deliberately attempting to mislead the Plaintiff in regard to her rights." (*Id.* ¶ 83.) As a result, Richter "never received consistent, valid, or meaningful accommodations for her disability both in superior court and appellate court, and was thus deprived of both testamentary and participatory access to these courts." (*Id.* ¶ 85.) The rulings from the Superior Court and Appellate Court were "clearly discriminatory," such as a September 30, 2010 ruling that was "a gossipy

rambling account of the case full of misleading and false information." (*Id.* ¶ 86.)

Richter also asserts claims against OAM, which formerly represented her in the divorce proceedings. In a April 2007 meeting with attorney James T. Flaherty, Richter "specifically reviewed the mental health issues in her case," but "Attorney Flaherty failed [to] provide any information regarding reasonable accommodation, and he failed to offer any reasonable accommodations which would have allowed her to obtain equal access to the services that he and his legal firm provides." (*Id.* ¶ 28.) Such reasonable accommodations would have included "additional time to hear, process, and respond to proposals that were brought before her for approval," but instead attorneys "insisted that if the Plaintiff did not act immediately, they would withdraw from her case." (*Id* .¶ 29.) This "bullying and threatening ... was a violation of the ADA prohibition against retaliation." (*Id.* ¶ 30.) On September 5, 2007 during a hearing on the firm's motion to withdraw from its representation, "Flaherty specifically attributed his decision to withdraw upon the plaintiff's mental health condition," but "there is no indication that at any time during the firms' representation of the plaintiff that he or any other member of the attorney firm offered any reasonable accommodations to ... ensure effective communication with the Plaintiff or in order to ensure that their services were accessible to the Plaintiff." (*Id.* ¶ 32.)

**\*4** Richter seeks (1) a judgment declaring that the Judicial Branch and OAM have violated the ADA; (2) an injunction prohibiting the Judicial Branch from discriminating on the basis of disability and requiring compliance with the ADA; (3) an order that the Judicial Branch provide its services to persons with disabilities in "a nondiscriminatory manner, including using a broader and more inclusive basis for making decisions on whether an individual is a qualified individual under the ADA;" (4) an order that OAM conduct its business in a manner to make its services accessible to all people with both visible and invisible disabilities; (5) an order that the Judicial Branch, Judge Barall, and members of OAM undergo training in ADA requirements; (6) an order the Judicial Branch and its personnel "cease interfering in the work of" and retaliating against "an ADA Advocate;" (7) an order providing that "all judgments in the lawsuits" involving Richter "be overturned and new trials ordered in which the Plaintiff's ADA" and constitutional rights "are

protected;" and (8) compensatory and punitive damages and attorney's fees. (*Id.* at 40–41.)

## II. Discussion

Defendants move to dismiss the Amended Complaint in its entirety, on the grounds that the Court lacks subject matter jurisdiction under Fed. R. Civ. P 12(b)(1) [2] and that Plaintiff has failed to state a claim for which relief can be granted under Rule 12(b)(6). [3]

### A. Sovereign Immunity

The Judicial Branch contends that the Court lacks subject matter jurisdiction over Richter's claims against it, because they are barred by sovereign immunity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. " 'Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts,' it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." *In re Charter Oak Associates,* 361 F.3d 760, 765 (2d Cir.2004) (quoting *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Although the State of Connecticut is not itself named as a defendant, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state," *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir.2006) (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)), including state courts, *see Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir.1999) ("The State Office of Court Administration is an arm of the state and therefore immune."); *Daigneault v. State of Conn. Judicial Branch,* No. 3:07cv122 (JCH), 2007 WL 869028, at \*2 (D.Conn. Mar. 19, 2007) *aff'd sub nom. Daigneault v. Judicial Branch, Connecticut,* 309

F. App'x 518 (2d Cir.2009) ( "The Judicial Branch is a department of the State of Connecticut.").

**\*5** Under § 5 of the Fourteenth Amendment, however, Congress may abrogate the State's Eleventh Amendment immunity, *Tennessee v. Lane,* 541 U.S. 509, 517, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004), and has done so for claims brought under Title II of the ADA, *see* 42 U.S.C. § 12202. In *Lane,* the Supreme Court upheld Congress' abrogation of sovereign immunity to enforce the fundamental right of access to the courts brought in a suit by two "paraplegics who use wheelchairs for mobility" and were not able to gain physical access to several courtrooms. 541 U.S. at 513. The Supreme Court concluded that "Congress had the power under § 5 to enforce the constitutional right of access to the courts," and thus "Title II unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services." *Id.* at 531. The Supreme Court emphasized:

> The remedy Congress chose is nevertheless a limited one. Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility. But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.

*Id.* at 531–32.

In *United States v. Georgia,* 546 U.S. 151, 159, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), the Supreme Court noted the disagreement among members of the Court "regarding the scope of Congress's 'prophylactic' enforcement powers

under § 5 of the Fourteenth Amendment" and held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." The Supreme Court did not address the issue of whether Title II validly abrogates state sovereign immunity for conduct that violates Title II but does not violate the Fourteenth Amendment, and instructed lower courts to consider

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159. The Supreme "Court expressly left open the possibility that misconduct that does not violate a fundamental right protected by the Fourteenth Amendment could nevertheless violate Title II and lead to a valid private cause of action for money damages against a state." *Olson v. State of New York,* No. 2:04cv00419 (ENV)(MLO), 2007 WL 1029021, at \*7 (E.D.N.Y. Mar. 30, 2007). But under this analysis, "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end," and the claim is dismissed for failure to state a Title II violation. *Mary Jo C. v. New York State & Local Ret. Sys.,* 707 F.3d 144, 152 (2d Cir.2013).

**\*6** Because Plaintiff's claims implicate her right of access to the courts, the Court will examine whether Plaintiff has stated a claim for relief under the ADA, and if so, whether the State is nevertheless immune from liability. *See Badillo–Santiago v. Naveira–Merly,* 378 F.3d 1, 6 (1st Cir.2004) ("Here, at least one of Badillo's federal claims implicates his right of access to the courts and thus falls within the holding of *Lane,* and so is not barred by the Eleventh Amendment. That is his claim that during his trial he was denied due process because there was no reasonable accommodation of his hearing impairment.").

### B. Discrimination on the Basis of Actual Disability

*1. Failure to State a Claim*
The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Lane,* 541 U.S. at 516–17. "In order to establish a violation under the ADA, [ ] plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg,* 331 F.3d 261, 272 (2d Cir.2003). [4] The Judicial Branch does not dispute that it is generally subject to the ADA with the limitations imposed by sovereign immunity.

Courts apply a three-part test to determine whether a plaintiff has a disability covered by the ADA. *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir.1998). First, the plaintiff must show the presence of a "mental or physical impairment." Second, the plaintiff must show that the impairment affects a "major life activity." Third, the plaintiff must show that the impairment "substantially limits" that major life activity. *Stalter v. Bd. of Co-op. Educ. Servs. of Rockland Cnty.,* 235 F.Supp.2d 323, 329 (S.D.N.Y.2002).

Although the ADA does not define the term "impairment," the EEOC has issued administrative regulations implementing the ADA, which define a "mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h). "Under the law of this Circuit, the EEOC's regulations are entitled to 'great deference' in interpreting the ADA." *Muller v. Costello,* 187 F.3d 298, 312 (2d Cir.1999).

Plaintiff alleges that she currently suffers from "stress and anxiety" and "Legal Abuse Syndrome, a form of PTSD." (Am.Compl.¶ 22.) "[S]tress and depression are conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder ." *Santos v. City of New York,* No. 01cv0120

(SAS), 2001 WL 1568813, *4 (S.D.N.Y. Dec. 7, 2001) (internal quotation marks omitted); *see also Reilly v. Revlon, Inc.,* 620 F.Supp.2d 524, 539 (S.D.N.Y.2009) (finding that depression may qualify as a disability for purposes of the ADA, "provided that the condition is not a 'temporary psychological impairment.' "). Although Plaintiff has not alleged specific facts which show that her conditions rise to the level of a mental impairment within the meaning of the ADA, the Court will assume for its analysis of the pending motions that she has satisfied this pleading burden. *See Mabry v. Neighborhood Defender Serv.,* 769 F.Supp.2d 381, 400–01 (S.D.N.Y.2011).

**\*7** Next, courts will consider the life activity upon which the plaintiff relies and whether it constitutes a major life activity. *See Bragdon v. Abbott,* 524 U.S. 624, 632, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). Plaintiff does not specifically identify any major life activities that are substantially limited by her impairment, but construing her pro se complaint liberally and looking to the accommodations that Plaintiff alleges were denied to her, such as having an assistant with her in court and the ability to take brief breaks (*see* Am. Compl. ¶ 50), the Amended Complaint suggests that as a result of her stress and anxiety, Richter had difficulty comprehending and participating in court proceedings. Thus, her complaint plausibly alleges a limitation on her ability to concentrate and communicate, which are major life activities as defined by EEOC regulations. *See* 29 CFR § 1630.2(i)(1)(i).

Finally, in determining whether a plaintiff suffers from a disability within the meaning of the ADA, courts will look to whether the plaintiff has pled facts tending to show that the impairment substantially limits the major life activity. According to the EEOC regulations, "substantially limit[ed]" means a person is "[u]nable to perform a major life activity that the average person in the general population can perform' " or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. 1630.2(j).

"To assess whether an impairment is substantially limiting, courts in this Circuit typically look to three factors: (1) the nature and severity of the impairment,

(2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact resulting from the impairment." *Stalter v. Bd. of Co-op. Educ. Servs. of Rockland Cnty.,* 235 F.Supp.2d 323, 329–30 (S.D.N.Y.2002). "To establish a disability under the ADA, there must be some proof of permanency," i.e. "the limitation of the claimed major life activity cannot be temporary. *Green v. New York City Health & Hosp. Corp.,* No. 04 cv5144 (PAC), 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008) (citing *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir.1999)).

The gravamen of the Amended Complaint is that Richter was regularly discriminated against on the basis of a perceived, not actual, disability, and thereafter, as a result of her perceived disability and the ensuing discrimination, she developed an actual disability, which was not reasonably accommodated. But even construing the Amended Complaint liberally, it plausibly claims only that Richter's actual disability was a temporary result of the anxiety caused by the judicial proceedings, and not an ailment that would continue permanently even after those proceedings were completed or an intermittent condition resulting from past discrimination by non-parties. (*See* Am. Compl. ¶ 22 ("[*A*]*s a result of discrimination* that [Richter] has experienced and continues to experience ... [she] has developed stress and anxiety for which she has received counseling on and off over the years. Further, the Plaintiff has developed Legal Abuse Syndrome, a form of PTSD *as a result of the discrimination* which she has endured in the hands of the Defendants." (emphasis added).) Accordingly, because Plaintiff has not plausibly claimed an ADA-covered disability, her allegations for discrimination under the ADA on the basis of actual disability must be dismissed.

## C. Discrimination on the Basis of Perceived Disability

**\*8** In addition to protecting individuals against discrimination on the basis of actual disabilities, the ADA protects an individual who is perceived to be disabled within the meaning of the ADA, *Giordano v. City of New York,* 274 F.3d 740, 748 (2d Cir.2001), "whether or not the impairment limits or is perceived to limit a major life activity" 42 U.S.C. § 12102(3)(A); *see also* 29 C.F.R. § 1630.2(l)(1).

Plaintiff alleges that a result of the fact that she "was perceived of as disabled, she was denied the services of the trial court such as family relations, mediation, special

masters, etc. and denied meaningful participation in pre-trial hearings, and trial court hearings" (Am.Compl.¶ 35), and that as a result "[t]he rulings in this case from the Superior Court as well as Appellate Court are clearly discriminatory" (*id.* ¶ 86). Plaintiff alleges that her perceived disabilities resulted in discrimination in state court judicial proceedings with results adverse to her.

### 1. Rooker–Feldman

Defendants maintain that the Amended Complaint must be dismissed under the *Rooker–Feldman* doctrine. "*Rooker–Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010). The doctrine also "prohibits federal courts from considering claims that are 'inextricably intertwined' with prior state court determinations." *Babalola v. B.Y. Equities, Inc.,* 63 F. App'x 534, 535 (2d Cir.2003).

Here, the requirements for *Rooker–Feldman* are unmistakably satisfied. First, Plaintiff claims she lost numerous rulings and judgments entered in state court. Second, she alleges that those judgments were the result of discrimination under the ADA and have caused her injury. Third, she requests this Court to review and overturn those decisions. Fourth, the challenged court proceedings terminated well before the filing of this suit. *See Watley v. Keller,* 3:13cv1858 (RNC), 2013 WL 6842743, at *2 (D.Conn. Dec. 27, 2013) ("Plaintiffs' claims against the Judicial Branch and Judge Keller directly challenge state court decisions that certain services available under the ADA did not have to be provided to the plaintiffs during the course of their termination proceedings."). [5]

### D. Retaliation

Plaintiff alleges that since November 16, 2012, when she filed [Doc. # 1] the Complaint in this action, "the Connecticut Judicial Branch has retaliated against the Plaintiff and she has been subjected to interference and harassment in her role as an ADA Advocate in support of litigants with disabilities." (Am. Compl. at 4.) Additionally, Plaintiff alleges that Judge Barall referred to her ADA coach as her "sexual partner" in a ruling (*id.* ¶

70); employees of the Judicial Branch interfered with the work of her ADA coach (*id.* ¶ 96(g)); and that the denial of her ADA requests constituted retaliation (*id.* ¶¶ 87(a)).

**\*9** "We apply the *McDonnell Douglas* burden-shifting rules to claims of retaliation pursuant to" the ADA and Rehabilitation Act. *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 54 (2d Cir.2002). Plaintiff therefore must first establish a prima facie case of retaliation, showing that she was "[1] engaged in protected activity, [2] that [Defendants were] aware of this activity, [3] that [they] took adverse action against the plaintiff, and [4] a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse ... action." *Id.* (internal citations and quotation marks omitted). Although Plaintiff's filing of this action is a protected activity, Plaintiff has not pled any facts to plausibly allege that Defendants were aware of this action. Further, Plaintiff has not alleged adverse action beyond the denial of the ADA accommodations that are also the subject of the failure to accommodate claims. *Cf. id.* ("RECAP alleges that the defendants retaliated against it for threatening to complain and actually complaining about the denial of the permit by withdrawing funds committed to it by the City for a different project."). To the extent that the same facts that underlie Plaintiff's failure to accommodate claim also constitute her retaliation claim, she has not pled any non-conclusory facts that plausibly suggest that Defendants denied her benefits in retaliation for her filing of this action or otherwise acted with a retaliatory motive. *See Twombly,* 550 U.S. at 555. Accordingly, Plaintiff's retaliation claims under the ADA and Rehabilitation Act are dismissed.

### E. Judicial Immunity of Judge Barall

Defendants seek dismissal of Plaintiff's claims against Judge Barall on the basis of judicial immunity. It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions. *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009). The purpose of absolute immunity is to protect "the independent and impartial exercise of judgment vital to the judiciary [which] might be impaired by exposure to potential damages liability." *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993). This species of immunity "is an immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9

(1991). Thus, it "operates to shield judges acting in their official capacity," *DiPasquale v. Milin,* 303 F.Supp.2d 430, 431 (S.D.N.Y.2004), and bars "claims against [judicial] defendants in their individual capacities," *Abrahams v. Appellate Div. of the Supreme Court,* 473 F.Supp.2d 550, 557 (S.D.N.Y.2007). "The cloak of immunity is not pierced by allegations of bad faith or malice, even though 'unfairness and injustice to a litigant may result on occasion.' " *Tucker v. Outwater,* 118 F.3d 930, 932 (2d Cir.1997) (quoting *Mireles,* 502 U.S. at 9) (internal citations omitted).

**\*10** Absolute judicial immunity has two limitations. First, a judge is not immune from liability for "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." *Mireles,* 502 U.S. at 11. Second, a judge is not immune for actions, though judicial in nature, "taken in the complete absence of all jurisdiction." *Id.*

Even though Plaintiff distinguishes between Judge Barall's actions taken "in a purely [a]dministrative, non-judicial capacity" (Am.Compl.¶ 111), the basis for her allegations is Judge Barall's conduct in presiding over the divorce proceedings. The determination of "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman,* 435 U.S. 349, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

A judge's control of ongoing proceedings and managing the court's docket is at the heart of the judicial function, and thus Plaintiff's claims against Judge Barall must be dismissed based on judicial immunity. *See Huminski v. Corsones,* 396 F.3d 53, 76 (2d Cir.2005) ("A court's control of its docket is also a judicial act because it 'is part of [a court's] function of resolving disputes between parties.' " (quoting *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (alterations in original)); *see also Goldblatt v. Doerty,* 503 F. App'x 537 (9th Cir.2013) ("The district court properly dismissed Goldblatt's claims regarding defendant's alleged denial of ADA accommodations because they arose out of defendant's rulings in his capacity as a judge presiding over a state court family law proceeding, and, therefore, were barred by absolute judicial immunity."). [6]

Additionally, Plaintiff's claims for injunctive relief against Judge Barall are barred by 42 U.S.C. § 1983, which provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Huminski v. Corsones,* 396 F.3d 53, 74 (2d Cir.2005). Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief was unavailable, and thus § 1983 bars Plaintiff's claims for injunctive relief.

**F. OAM**

OAM maintains that Plaintiff's claims against it fail for numerous reasons. First, it asserts that the ADA claims are barred under the statute of limitations. The discriminatory conduct that Plaintiff alleges with regard to OAM occurred in April 2007. (*See* Am. Compl. ¶ 28.) Richter's Complaint was filled more than five years later on November 16, 2012. "Like many of the federal civil rights statutes, the ADA does not contain its own statute of limitations," but "this Circuit has uniformly applied Connecticut's three-year tort statute of limitations in other civil rights contexts" and does so as well with the ADA. *Duprey v. Connecticut Dep't of Motor Vehicles,* 191 F.R.D. 329, 341 (D.Conn.2000).

**\*11** Likewise, Richter's claim for intentional infliction of emotional distress is also barred by the three-year statute of limitations. *See* Conn. Gen.Stat. § 52–577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also DeCorso v. Watchtower Bible & Tract Soc. of New York,* 46 Conn.Supp. 386, 395, 752 A.2d 102 (Super.Ct.2000) ("[C]laim of intentional infliction of emotional distress is time barred by the three year statute of limitations.").

In her opposition, Richter asserts that the statute of limitations "does not apply," because Defendant's ADA violations "have caused ongoing injuries." (Pl.'s Opp'n to OAM [Doc. # 42] at 3.) "Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used." *Morse v. Univ. of Vermont,* 973 F.2d 122, 125 (2d Cir.1992). "In analyzing the timing of accrual in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful.'

" *Id.* (quoting *Chardon v. Fernandez,* 454 U.S. 6, 8, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981)) (emphasis in original)). Given that the discriminatory acts that Richter asserts against OAM occurred more than five years after she filed the Complaint, such claims are barred by the statute of limitations.

Even if Plaintiff's claim under Title III of the ADA were not barred by the statute of limitations, her claims would fail because she lacks standing. "A private individual may only obtain injunctive relief for violations of a right granted under Title III; [s]he cannot recover damages." *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 86 (2d Cir.2004). Accordingly, Plaintiff's claims for monetary damages must be dismissed on this basis as well. [7]

To the extent that Plaintiff seeks injunctive relief against OAM, she has not pleaded that she "plausibly intends to return to the place of discrimination," *Camarillo v. Carrols Corp.,* 518 F.3d 153, 158 (2d Cir.2008), i.e., that she intends to seek the services of OAM again in the future, such that she would have standing to seek injunctive relief under the ADA. Given that OAM sued Richter for unpaid fees and that Richter asserts that the firm provided "inadequate representation," (Am.Compl.¶ 33– 34), it is not plausible that Richter would against seek OAM's legal representation. Accordingly, Richter's claims for injunctive relief must be dismissed on this basis as well. *See Doe v. Deer Mountain Day Camp, Inc.,* 682 F.Supp.2d 324, 340 n. 32 (S.D.N.Y.2010) ("Adam has failed to demonstrate a plausible intention or desire to return to [the business] but for barriers of access of which he is aware. As such, Adam lacks standing to seek injunctive relief on his own behalf." (internal citations and quotation marks omitted)).

Even if Plaintiff's claim for intentional infliction of emotional distress were not barred by the statute of limitations, Plaintiff has failed to state a claim for relief because she has not alleged extreme and outrageous conduct. To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 443,

815 A.2d 119 (2003). Conduct is extreme and outrageous if it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id* . "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210, 757 A.2d 1059 (2000). Plaintiff has not alleged any conduct beyond an ADA violation, which without more does not constitute "extreme and outrageous" behavior. *See Armstead v. Stop & Shop Companies, Inc.,* No. 3:01cv1489 (JBA), 2003 WL 1343245, at *5 (D.Conn. Mar. 17, 2003) ("Failure to accommodate plaintiff's disability ... do[es] not rise to the level of exceeding all bounds usually tolerated by decent society.").

### G. Plaintiff's Motion to Strike

**\*12** Plaintiff has moved to strike [Doc. # 50] the State's memorandum in support and a number of exhibits submitted in support of its motion to dismiss on the basis that it contains material not relevant to her complaint and confidential documents that she submitted to the Judicial Branch in connection with her ADA requests. The exhibits submitted by the State, however, such as pleadings from the state court actions and Plaintiff's requests for ADA accommodations are frequently referenced in the Amended Complaint and form the basis for her allegations. "On a motion to dismiss the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.' " *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir.2001) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir.1991) (alterations in original). Accordingly, Defendants were entitled to submit such documents for the Court's consideration, and Plaintiff's motion to strike is denied. [8]

### III. Conclusion

For the reasons discussed above, Defendants' motions [Doc.35, 45] to dismiss are GRANTED, and Plaintiff's Motion [Doc. # 50] to Strike is DENIED. The Clerk is directed to close this case.

IT IS SO ORDERED.

### All Citations

Not Reported in F.Supp.3d, 2014 WL 1281444

---

Footnotes

1   Plaintiff appealed both the award of attorneys' fees and her claim that Judge Barall improperly deprived her of a hearing before making such an award. The Appellate Court of Connecticut affirmed the award of attorneys' fees for litigation misconduct based on the trial court's determination that Plaintiff caused the court's docket to be " 'peppered with' " excessive and unwarranted " 'motions and uninvited memoranda.' In addition, [Judge Barall] found that the plaintiff had caused 'substantive legal costs to the defendant by filing false claims' and that she had filed the present case in order to 'get even with a person she believed was her enemy.' " *Richter v. Richter,* 137 Conn.App. 231, 233 (2012). The Appellate Court also concluded that Plaintiff had not been deprived of the opportunity to participate in a hearing, because the trial court twice continued the hearing due to Plaintiff's illness and finally scheduled a telephonic hearing in which Plaintiff did not participate despite a court order to do so. *Id.* at 237. The trial court also provided Plaintiff with an opportunity to submit written opposition. *Id.* at 237.

2   "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

3   To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555 (alterations in original).

4    "Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, we consider the merits of these claims together." *Powell v. Nat'l Bd. of Med. Examiners,* 364 F.3d 79, 85 (2d Cir.2004) (internal citations omitted).

5    Additionally, Plaintiff filed an appeal to the Appellate Court, asserting that a number of the same Superior Court actions that also form the basis for her ADA allegations in the Amended Complaint violated due process. *See, e.g., Richter,* 137 Conn.App. at 233. Plaintiff cannot assert claims that she has already litigated in state court due to issue preclusion. A party is barred by issue preclusion from "relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998). Plaintiff's only due process allegation in the Amended Complaint concerns her allegation that she was denied a hearing before the Superior Court awarded attorneys' fees. (Am.Compl.¶ 73.) Plaintiff already appealed this exact issue to the Appellate Court, *see Richter,* 137 Conn.App. at 237, and is precluded from litigating this same issue before this Court. *See Boguslavsky,* 159 F.3d at 720. To the extent that Plaintiff seeks to litigate due process claims that she did not raise in state court, such claims would necessarily implicate this Court's reassessment (and rejection) of the state court judgments and are thus similarly unsuitable for review under *Rooker–Feldman. See Watley,* 2013 WL 6842743, at *2 n. 2.

6    Judicial immunity also extends to court personnel in the performance of administrative tasks, which are "judicial in nature and an integral part of the judicial process." *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997). To the extent the Amended Complaint asserts claims against the Judicial Branch for its employees' role in carrying out Judge Barall's orders (*see* Am. Compl. ¶¶ 44–47, 62), these claims must also be dismissed on the basis of judicial immunity. *See Isasi v. Heinemann,* No. 08cv5284 (BMC), 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009) ("Court clerks have been granted absolute immunity where the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge.").

7    Plaintiff alleges that OAM's "bullying and threatening ... was a violation of the ADA prohibition against retaliation" (*id.* ¶ 30) but does not plead any non-conclusory facts to support her assertion that OAM's denial of reasonable accommodations was retaliation for her having engaged in a protected activity.

8    Although there is a "a strong presumption of [public] access" to "judicial documents," *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 121 (2d Cir.2006), to the extent that Plaintiff asserts that the exhibits contain "highly sensitive medical and psychiatric information," *Desmond v. Astrue,* 660 F.Supp.2d 329, 335 (D.Conn.2009), such as that contained in her ADA requests, the appropriate response is to submit a narrowly tailored motion to seal portions of these materials. *See Crossman v. Astrue,* 714 F.Supp.2d 284, 290 (D.Conn.2009) ("[T]he Court will not permit a blanket order allowing Ms. Crossman to file every document under seal.... However, if Ms. Crossman can identify particular portions of individual documents that she believes should be shielded from public view, she may seek individual orders relating to those documents."). In order to do so, Plaintiff must make a separate motion in accordance with District of Connecticut Local Rule 5(e), specifying precisely what she wishes to be kept under seal and making a particularized showing of good cause as to why the Court should depart from the strong presumption against sealing any court records to public inspection. *Id.*

---

End of Document    © 2018 Thomson Reuters. No claim to original U.S. Government Works.